UNITED STATES of America,
Plaintiff–Appellee,

v.

Johnnie Louis McALPINE, aka Louie
McAlpine, Defendant–Appellant.

No. 93–3279.

United States Court of Appeals,
Tenth Circuit.

Aug. 17, 1994.

Submitted on the briefs: *

Randall K. Rathbun, U.S. Atty., Lanny D. Welch, Asst. U.S. Atty., Wichita, KS, for plaintiff-appellee.

Edward W. Dosh, Parsons, KS, for defendant-appellant.

Before BALDOCK, McWILLIAMS, and BRORBY, Circuit Judges.

BALDOCK, Circuit Judge.

Defendant Johnnie Louis McAlpine pleaded guilty to eight counts of mail fraud, 18 U.S.C. § 1341, and was sentenced to forty-six (46) months imprisonment, to be followed by three years of supervised release, and ordered to pay $1,403,451 in restitution. Defendant appeals asserting error in his sentencing. We have jurisdiction pursuant to 18 U.S.C. § 3742.

On January 23, 1992, Defendant was indicted on twenty-six counts of mail fraud, 18 U.S.C. § 1341. In the indictment, Defendant was charged with scheming to defraud investors by inducing them to buy interests in oil and gas leases and properties. Through a series of misrepresentations, Defendant had lured sixty-five investors into the scheme and had obtained from them approximately $7 million in investment monies. Although Defendant actually used an undetermined amount of the funds for legitimate investment purposes, he also diverted a portion of

---

* Both parties waived oral argument. The case is     therefore submitted on the briefs.

the funds to his own personal use. In addition, Defendant misled investors as to their ownership interests in the various properties and as to the production capability of the properties. As a result of Defendant's fraud and misrepresentations, the investors ended up losing substantial amounts of money on their investments. Ultimately, Defendant pleaded guilty to eight of the charged counts.

As part of the plea bargain agreement, the government agreed to recommend Defendant receive a sentence at the low end of the guideline range, as well as a two-level reduction for acceptance of responsibility. However, the government and Defendant could not agree either as to a specific amount of loss or a specific amount of restitution which Defendant should be ordered to pay to the investors. The United States Probation Office prepared a presentence report ("PSR") and in the report estimated the actual loss to be in excess of $5 million. Defendant objected to the Probation Office's loss findings, and the district court set a hearing to resolve Defendant's objections and to compute a loss and restitution amount.

At the hearing, the government called three witnesses. The first witness was an investor, Mr. Ralph Holt, who testified that he and his children invested a total of $1,218,921.53 in Defendant's schemes and that the minimal returns they received did not exceed the expenses associated with the wells. As a result, Holt explained, the investments yielded little or no overall return. The second witness, Kelly Schmidt, was a petroleum engineer who surveyed the oil and gas properties to determine if any of the properties had remaining value. Schmidt's conclusion was that most of the properties had either minimal or no value; however, Schmidt found that two properties—the Oklahoma City property and Jewell # 1— had a combined remaining value of $624,000. Finally, the government called Robert Schick, a United States Postal Inspector. Schick testified that, beginning in late 1988, he attempted to contact the sixty-five investors to gather information concerning their individual losses. Thirty-seven of the investors responded, and Schick calculated that

these thirty-seven sustained a combined loss of $5.3 million.

In response, Defendant called two witnesses at the hearing—Mr. John Vietz and Defendant's father John McAlpine. Only McAlpine's testimony is relevant for purposes of this appeal. McAlpine testified, *inter alia*, that one of the oil and gas properties—the Casey field—had a remaining value of $124,-000, and that $270,000 in equipment had been removed by the investors from some of the Oklahoma oil wells.

Subsequent to the hearing, the court prepared a memorandum in which it detailed its findings. In the memorandum, the court adopted Postal Inspector Schick's $5.3 million actual loss figure as to the thirty-seven investors, 832 F.Supp. 1426. After subtracting the combined estimated value of the various remaining properties—$624,000 from Schmidt's evaluations and $394,000 from Defendant's father's evaluation—the court arrived at a net loss figure of $4,282,000 for the thirty-seven investors. The court declined to reduce the loss figure further despite additional arguments by the Defendant. The court then concluded:

> The [thirty-seven] investors who responded to the postal inspector do not represent all of the investors. While the actual losses sustained by the other investors cannot be precisely determined, there is no reason to ignore them or to assume that they did not suffer losses, too. On the contrary, in view of the scope of the scheme and the fact that it is shot through and through with fraud, the only reasonable conclusion is that the other investors likewise suffered losses. The court has no trouble concluding that when the entire scheme is considered, as it must be, the actual loss exceeds $5 million.

Defendant's base offense level for violation of 18 U.S.C. § 1341 was level 6. From there, the court adjusted 11 levels because the loss caused by Defendant exceeded $5 million, *see* U.S.S.G. § 2F1.1 (1987 version), which resulted in an offense level of 17. Combined with a two-level increase for more than minimal planning, Defendant's final offense level was 19. The court rejected the government's recommendation that Defendant receive a

two-level reduction for acceptance of responsibility and also rejected the government's recommendation that Defendant receive a sentence at the low end of the guideline range. Using criminal history category III, the court determined the applicable sentencing range was thirty-seven to forty-six months and sentenced Defendant to forty-six months imprisonment. The court also ordered Defendant to pay restitution in the amount of $1,403,451.

On appeal, Defendant raises four challenges to his sentence. Defendant argues that the district court erred by: (1) shifting the burden of proving loss to him; (2) calculating actual loss improperly; (3) failing to credit Defendant for acceptance of responsibility; and (4) using gross loss figures in computing the restitution amount.

## I.

■ Defendant first contends the district court erred in shifting the burden to prove loss to him when it relied on disputed facts in the PSR to compute actual loss. Defendant argues he is entitled to resentencing because the court "may have relied upon the disputed facts in the PSI without making a finding regarding those facts." *United States v. Gattas*, 862 F.2d 1432, 1435 (10th Cir.1988).

■ Clearly, the government has the burden to prove the amount of loss by a preponderance of the evidence. *See United States v. Reddeck*, 22 F.3d 1504, 1512 (10th Cir.1994). Defendant's contention that the district court wrongfully shifted the burden of proof to him is a legal issue which we review de novo. *See United States v. Kirk*, 894 F.2d 1162, 1163 (10th Cir.1990).

Our review of the record convinces us the district court did not erroneously shift the burden of proving the amount of loss to Defendant by relying on disputed facts in the PSR. Instead, the court relied on the evidence presented by the government at the sentencing hearing to support its loss calculation. At the sentencing hearing, the govern-ment met its burden to prove loss through the testimony of Postal Inspector Schick. Schick testified that thirty-seven investors had losses of $5.3 million. The court found Schick's testimony to be reliable, and Defendant did not dispute the $5.3 million actual loss figure. From this figure, the court subtracted the value of the various remaining oil properties, as determined by Schmidt and Defendant's father John McAlpine, to reach a net actual loss figure of $4.2 million. All of these amounts were adduced from testimony at the hearing, rather than from the PSR. Although the court stated in its memorandum that it would not "totally disregard the loss figures used by the probation officer," the court clearly set forth its findings on actual loss based on the evidence and testimony adduced at the hearing. Therefore, we conclude the court held the government to its burden of proving loss and did not erroneously shift the burden to Defendant.

Furthermore, it would appear that Defendant asserts error by the district court in violation of Fed.R.Crim.P. 32(c)(3)(D). Contrary to Defendant's assertions however, we conclude the court considered the evidence adduced at the hearing, and did not take into account disputed matters in computing the amount of loss. Therefore, we find no violation of Rule 32, and Defendant is not entitled to resentencing on the question of loss. *See Gattas*, 862 F.2d at 1435 ("[r]esentencing is an appropriate remedy ... only when the sentencing judge may in fact have relied on disputed facts in the PSI without conducting a hearing on the truth of such facts").[1]

## II.

■ Defendant next argues the district court erred in its calculation of actual loss. Specifically, Defendant argues the court erred in: (1) estimating actual loss as opposed to arriving at an exact loss figure, and (2) making findings of fact contrary to the evidence on actual loss. We review the district court's interpretation and application of

---

1. Defendant also argues he is entitled to resentencing as to actual loss because the court relied on disputed facts in determining the amount of investors' funds commingled by Defendant. Defendant's contention lacks merit, however, be-cause our review of the record convinces us the disputed matter—*i.e.*, the extent of commingling—was clearly not considered by the court in computing the amount of actual loss.

the sentencing guidelines de novo, *United States v. Brownlee,* 970 F.2d 764, 764 (10th Cir.1992), and review the court's factual findings for clear error. *United States v. Lyons,* 992 F.2d 1029, 1032 (10th Cir.1993). We will not disturb the court's factual findings unless they are without support in the record, or unless "after reviewing all the evidence we are left with the definite and firm conviction that a mistake has been made." *United States v. Easterling,* 921 F.2d 1073, 1077 (10th Cir.1990), *cert. denied,* 500 U.S. 937, 111 S.Ct. 2066, 114 L.Ed.2d 470 (1991).

### A.

▮▮▮ Under the sentencing guidelines, the district court is empowered to make a reasonable estimate of loss attributable to fraud, based on all available information. *See* U.S.S.G. § 2F1.1, Application n. 8; *see also* U.S.S.G. § 2B1.1, Application n. 3 (court empowered to make a reasonable estimate of the loss for theft-related offenses). At the time of Defendant's sentencing, the applicable guideline provided in part:

> The amount of loss need not be precise. The court is not expected to identify each victim and the loss suffered to arrive at an exact figure. The court need only make a reasonable estimate of the loss, given the available information. The estimate may be based on an approximate number of victims and an estimate of the average loss to each victim, or on more general factors, such as the nature and duration of the fraud....

U.S.S.G. § 2F1.1, Application n. 8 (1987 version). The guidelines also expressly authorized the court to consider the nature and scope of the entire scheme in determining the amount of loss. *See* U.S.S.G. § 2F1.1, Application n. 8. (1987 version). As a result, the court was clearly within its authority in estimating the loss attributable to Defendant's fraud.

Furthermore, we conclude the court's estimation of actual loss was not erroneous in the instant case. The court was presented with undisputed testimony of $4.2 million in net actual losses for the thirty-seven responding victims. The court also heard Schick's testimony that the twenty-eight other investors, who did not respond to his inquiries during the investigation, also incurred losses. Tr.Vol. III, p. 135–36. Moreover, although Schick did not provide loss figures for these remaining twenty-eight investors, Holt provided the following testimony at the hearing:

> Q (by the court): How do you know [the other investors] had other expenses [associated with their investments in the oil and gas properties]?
>
> A (by Holt): I have received copies of billings from Oakland as to what they billed the participants and I know that they were billed on the same basis that I was billed. I know that I have submitted bills to them for legal expenses we incurred because I handled the bookkeeping on that. So I know that their proportionate share was equal and handled on a pro rata basis, as was mine, for anything that happened after that point.

Tr.Vol. III, p. 60.

Based on the testimony of Schick and Holt, the court could reasonably infer that the other twenty-eight investors sustained losses on their investments. Having concluded this inference was reasonable, and given the undisputed testimony that thirty-seven investors lost $4.2 million, we hold the court could also reasonably conclude the other twenty-eight investors' losses were at least in excess of $800,000. In doing so, the court properly cited the nature of the scheme—the fact that Defendant's far-reaching misrepresentations and fraud permeated the scheme from beginning to end—and the scope of the scheme—the fact that Defendant's fraud extended over a period of two years. *See* U.S.S.G. § 2F1.1, Application n. 8. We conclude the court's reference to the nature and scope of the scheme, together with the evidence of the amount of loss suffered by the thirty-seven investors, supports the court's estimation that the amount of loss sustained by all sixty-five investors exceeded $5 million.[2]

**2.** Contrary to Defendant's assertions, once the court found the total amount of loss exceeded $5 million, the court was not required to further fix an exact, precise amount of the loss. *See, e.g.,*

### B.

██ Defendant also argues the court's factual findings concerning actual loss are contrary to the evidence. Defendant claims the court improperly failed to reduce the amount of loss by: (1) $1.1 million for amounts pledged by investors but not paid, and (2) $2 million for tax benefits obtained by the victims through their investments.

We conclude the district court did not erroneously refuse to reduce the actual loss amount by $1.1 million for amounts pledged but not paid. The record reflects that the investors sustained a minimum of $4.2 million in losses without any reference to the $1.1 million they ultimately decided not to invest. Because the court never added the $1.1 million figure into its calculation of the loss, we conclude the court correctly refused to reduce the total amount of loss by $1.1 million.

The court also correctly refused to give Defendant a $2 million credit because the victims were able to obtain tax benefits on their investments. Defendant cites no authority in support of his novel proposition, and we have found none. In previous cases where we have deducted the value of something the victim has received in computing actual loss, Defendant himself has been responsible for the victim's receipt of something of value. *See United States v. Smith,* 951 F.2d 1164, 1167 (10th Cir.1991) (victims losses decreased because they received from Defendant value in form of security interests and promises of individual borrowers to repay fraudulently secured loans); *United States v. Gennuso,* 967 F.2d 1460, 1461–62 (10th Cir.1992) (victims losses decreased because they received from defendant value of wholesale cost of water purification system and of a vacation package).

We note that had the Sentencing Commission desired to allow for tax savings to a victim as an element to be considered in reducing loss, it could have provided for such in the Guidelines. *See, e.g.,* U.S.S.G. § 2B1.1, Application n. 2 (specifically providing that interest that could have been earned is not considered in calculating loss of stolen funds). Because the Sentencing Commission did not do so, and because no Tenth Circuit or other precedent supports Defendant's argument to reduce the amount of loss by a victim's tax savings, we reject Defendant's argument and conclude the district court did not err in refusing to reduce the amount of loss by the amount of the victims' tax savings.

### III.

Defendant next contends the district court erred in denying him a sentence reduction for acceptance of responsibility. Specifically, Defendant claims the court erred in: (1) relying on an unsworn statement submitted to the probation officer by Defendant to find he had not accepted responsibility after earlier finding a portion of the same statement unpersuasive on another issue, and (2) making findings of fact contrary to the evidence, including a finding that Defendant's failure to testify at his sentencing hearing was to avoid cross-examination.

██ Defendant has the burden of proving he is entitled to a sentence reduction for acceptance of responsibility and must show "recognition and affirmative acceptance of personal responsibility for his criminal conduct." U.S.S.G. § 3E1.1(a). We review the court's determination not to allow a reduction for acceptance of responsibility for clear error. *United States v. Spedalieri,* 910 F.2d 707, 712 (10th Cir.1990). "[T]he sentencing judge is in a unique position to evaluate a defendant's acceptance of responsibility. For this reason, the determination of the sentencing judge is entitled to great deference on review." U.S.S.G. § 3E1.1, application n. 5.

### A.

██ First, contrary to Defendant's assertions, the court was clearly entitled to examine Defendant's statement to the probation officer, whether sworn or not, in determining whether reduction for acceptance of

---

*United States v. Chichy,* 1 F.3d 1501, 1510–11 (6th Cir.), *cert. denied,* —— U.S. ——, 114 S.Ct. 620, 126 L.Ed.2d 584 (1993) (court estimates actual loss as between $70,000 and $120,000, without specifying an exact figure).

responsibility was appropriate. *See United States v. Beserra*, 967 F.2d 254, 255 (7th Cir.), *cert. denied*, —— U.S. ——, 113 S.Ct. 419, 121 L.Ed.2d 341 (1992) (upholding district court's refusal to grant reduction for acceptance of responsibility based on the district court's conclusion that the defendant's letter to the probation officer showed he had not accepted responsibility for his actions); *see also United States v. Beaulieu*, 893 F.2d 1177, 1179 (10th Cir.1990) (district court entitled to use any reliable information to support its factual determinations); U.S.S.G. § 6A1.3(a) ("[i]n resolving any reasonable dispute concerning a factor important to the sentencing determination, the court may consider relevant information without regard to its admissibility under the rules of evidence ... provided that the information has sufficient indicia of reliability"). Moreover, the court's reliance on Defendant's unsworn statement after earlier finding a portion of the same statement unpersuasive was entirely consistent. Just as the court found Defendant's statements regarding commingling lacked credibility, it also found Defendant's statements concerning his role in the offense lacked credibility. We conclude the court's use of Defendant's statement was entirely proper.

### B.

■■■■ We also reject Defendant's argument that the district court's factual findings were clearly erroneous. The district court recited at length its reasons for concluding Defendant failed to prove he was entitled to a reduction for acceptance of responsibility. The court cited several examples in Defendant's statement to support its conclusion, including Defendant's assertions that the investors were "sophisticated," and that the investments were "risky," and that "[t]he fraud primarily involved the inefficient operation of the fields and shoddy accounting techniques used by [Defendant]." The court concluded these examples, instead of admissions of guilt, were merely excuses by Defendant, and attempts by Defendant to shift blame away from himself. In addition, the court cited "the overall tenor of [Defendant's] objections to the presentence report," and "the evidence he sought to elicit at the hearing and in a post-hearing memoranda" in support of its conclusion that Defendant had failed to accept responsibility for the fraud. The district court was in the best position to observe all of this evidence, and did not clearly err in holding the Defendant had not met his burden to prove he was entitled to a reduction for acceptance of responsibility.

### IV.

■■■■ Finally, Defendant challenges the district court's calculation of the amount of restitution. Defendant argues that the court erred in using gross figures instead of actual loss figures in computing restitution. Defendant claims the court's reliance on the gross figures resulted in a restitution amount restoring the victims' investments, instead of compensating them for their losses. We review the court's calculation of restitution for clear error. *United States v. Mitchell*, 15 F.3d 953 (10th Cir.1994).

Under 18 U.S.C. § 3663, the sentencing court is authorized to order a defendant to make restitution to any victim of his offense. In deciding whether to order restitution, the court shall consider, among other things, "the amount of loss sustained by any victim as a result of the offense." 18 U.S.C. § 3664(a).

In calculating the amount of loss, the district court considered both Postal Inspector Schick's testimony on actual loss and the probation officer's figures on total investment, which were contained in the presentence report. The court prepared a chart identifying some of the victims and set forth its best estimate of the "loss amounts" for those victims. The court then added all of the amounts together to reach a total restitution figure.

However, the court's calculation of the restitution amount is problematic because it is unclear whether the individual figures underlying the total amount of restitution actually represent loss suffered by the victims or merely the amount they invested in the schemes. For some of the victims, the court's computed restitution amounts correspond exactly to the total investment figures in the PSR. For other victims, the figures

are different. However, even where the figures are different, the record does not indicate how the court arrived at the specific figures. As a result, we are unable to effectively review the court's findings, and are unable to determine if the findings represent the victims' losses. Thus, we vacate the order of restitution and remand for the court to make specific factual findings consistent with this opinion in recomputing the restitution amount. *See United States v. Gilbreath,* 9 F.3d 85, 87 (10th Cir.1993) (where record was unclear as to whether defendant had present assets or the capacity to generate income through future legal undertakings to satisfy restitution award, court vacated restitution order and remanded for further proceedings).

In sum, we AFFIRM the district court's calculation of actual loss, and its denial of a reduction for acceptance of responsibility. We VACATE the restitution order and REMAND for further proceedings consistent with this opinion.