F I L E D
United States Court of Appeals
Tenth Circuit

MAY 8 1997

PATRICK FISHER
Clerk

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

 Plaintiff-Appellee,

v.

STEVEN LEE PYRON,

 Defendant-Appellant.

No. 95-5210
(D.C. No. 95-CR-9-B)
(N.D. Okla.)

**ORDER AND JUDGMENT**[*]

Before **BRORBY, EBEL** and **KELLY**, Circuit Judges.


 After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. *See* Fed. R. App. P. 34(a); 10th Cir. R. 34.1.9. The case is therefore ordered submitted without oral argument.

---

 [*] This order and judgment is not binding precedent except under the doctrines of law of the case, *res judicata* and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

Mr. Pyron was convicted by a jury of three counts of Mail Fraud and Causing a Criminal Act, in violation of 18 U.S.C. § 1341 and 18 U.S.C. § 2(b), and three counts of Wire Fraud and Causing a Criminal Act, in violation of 18 U.S.C. § 1343 and 18 U.S.C. § 2(b). Mr. Pyron was sentenced to thirty-six months per count, each sentence to run concurrently. The sentence was based, in part, on the district court's finding of a loss range between $70,000 and $120,000.

On appeal, Mr. Pyron challenges the trial court's decision to exclude portions of testimony from his wife, Mrs. Pyron, on hearsay grounds. Specifically, Mr. Pyron argues the exclusion of the testimony was reversible error because the offered statements fit within the Fed. R. Evid. 803(3) state of mind exception to the hearsay rule. Mr. Pyron also contests his sentence on the grounds the district court erred in its determination of loss for purposes of the Sentencing Guidelines. After consideration on appeal, we affirm Mr. Pyron's conviction and sentence.

## I. Background

In the indictment, Mr. Pyron was charged with scheming to defraud investors by inducing them to buy interests in oil and gas leases. At trial, the government attempted to show that through a series of misrepresentations, Mr.

Pyron defrauded investors and diverted the money for his own personal use. Mr. Pyron, through his company, Serene Oil, solicited investors for the "Misener Sandstone project." The investors in the Misener project were contacted by telephone, and were told that in exchange for their investment a well would be drilled and they would receive a working interest in the oil well. At trial, evidence was introduced showing that despite the money invested in the Misener project, and despite his representations to the contrary, no drilling was done at the Misener project. Further, evidence was admitted to show that contrary to the investor agreements, Mr. Pyron used investor funds to pay his personal living expenses. After sending their money, the investors made repeated, failed attempts to contact Mr. Pyron.

## II. Fed. R. Evid. 803(3)

At trial, the government admitted evidence Mr. Pyron left Oklahoma for Kentucky at the same time investors were attempting to contact Mr. Pyron regarding the status of their investments. Mr. Pyron attempted to admit testimony from his wife, Mrs. Pyron, that Mr. Pyron had told her he intended to go to Kentucky to raise money to complete the Misener project, then intended to return to Tulsa to oversee the project's completion. The district court excluded the testimony based on hearsay. Mr. Pyron argues the district court erred in failing to

admit the testimony under Fed. R. Evid. 803(3), the state of mind exception to the hearsay rule.

Evidentiary rulings rest within the sound discretion of the trial court, and we review those decisions only for an abuse of that discretion. *United States v. Tome*, 61 F.3d 1446, 1449 (10th Cir. 1995). "Our review is especially deferential when the challenged ruling concerns the admissibility of evidence that is allegedly hearsay." *Id.*

Hearsay testimony, or testimony as to out of court statements offered to prove the truth of the matter asserted, is generally inadmissible. Fed. R. Evid. 802. However, under Fed. R. Evid. 803(3), "[a] statement of the declarant's then existing state of mind, emotion, sensation, or physical condition ..., but not including a statement of memory or belief to prove the fact remembered or believed," is admissible as an exception to the hearsay rule. Here, Mr. Pyron argues his wife's testimony fit the exception because it showed his lack of intent to evade his investors. We disagree.

Fed. R. Evid. 803(3) allows a declarant's out of court statement not to prove the matter asserted, but to show a future intent of the declarant to perform an act

in conformity with the statement, if the occurrence of that act is in issue. *United States v. Freeman*, 514 F.2d 1184, 1190 (10th Cir. 1975). In other words, statements of intent are admissible to provide a foundation for the declarant's subsequent actions. *Id.* at 1190.

Mr. Pyron's statements regarding his future intent to raise money and return to Oklahoma would be admissible to prove he, in fact, did both of those things. Mr. Pyron does not contest the fact he did neither of those acts. Consequently, the statements do not fit Rule 803(3) to the extent they were offered to show Mr. Pyron performed an act in conformity with his intent.

Second, Mr. Pyron's statements did not express any "intent" as to whether he intended to defraud his investors; he merely expressed his intent to raise more money and to return to Oklahoma. *See Tome*, 61 F.3d at 1454 (child's statement asking sitter not to let her be taken back to her father inadmissible under Rule 803(3) because statement did not express fear, but merely a desire to remain with her mother). Consequently, the statements do not fit within the parameters of Rule 803(3). We hold because the statements do not fit the confines of Fed. R. Evid. 803(3), the district court did not abuse its discretion in failing to admit them.

Mr. Pyron attempts to argue the district court erred in excluding the testimony on the grounds it was hearsay. However, the court excluded the testimony on the grounds the out of court statement was offered to prove the matter asserted and did not fit the Fed. R. Evid. 803(3) exception. Mr. Pyron argues because the statements fit Rule 803(3) it was irrelevant whether the statements were offered for their truth. This argument fails, however, because, as the district court properly held, the statements did not fit the hearsay exception of Rule 803(3). We hold the district court did not abuse its discretion in excluding the testimony based on hearsay.

## III. Calculation of Loss

Mr. Pyron argues the district court erred in its calculation of loss. Specifically, Mr. Pyron challenges the district court's inclusion in the calculation of loss the following two amounts: 1) Gerald Altobelli's and Roger Hutchinson's investment of $8,894 in the "Pettiquah Project"; and 2) Daniel Cameron's investment of $18,412 into the "Watson Project" in Cowley County, Kansas. Consequently, Mr. Pyron maintains the proper loss figure is $66,084.75 rather than $93,390.75, which would result in a one-level reduction in his offense level. *U.S. Sentencing Guidelines Manual* § 2F1.1(b)(1)(F), (G) (1994).

Neither the Pettiquah Project nor the Watson Project were part of the charged conduct. Instead, evidence of Mr. Pyron's conduct regarding the Pettiquah Project was admitted as "similar acts" evidence under Fed. R. Evid. 404(b). Evidence of Mr. Pyron's conduct regarding Mr. Cameron's investment was admitted during sentencing for the purpose of calculating loss.

Section 2F1.1 of the United States Sentencing Guidelines provides for an increase in a defendant's base offense level for the amount of "loss" suffered by the defendant's victims. USSG § 2F1.1 (1994). Generally, "loss" is "the value of the money, property, or services unlawfully taken." *Id.*, comment. n.7. For purposes of sentencing, the district court need not determine loss with precision. Rather, "[t]he court need only make a reasonable estimate of the loss, given the available information." *Id.*, comment. n.8; *United States v. McAlpine*, 32 F.3d 484, 488 (10th Cir.), *cert. denied*, 513 U.S. 1031 (1994). The Guidelines also authorize the court "to consider the nature and scope of the entire scheme in determining the amount of loss." *Mc Alpine*, 32 F.3d at 488.

While the government has the burden to prove the amount of loss by a preponderance of the evidence, on appeal we review the district court's findings of fact regarding loss calculation under a clearly erroneous standard. *Id.* at 487;

*United States v. Abud-Sanchez*, 973 F.2d 835, 838 (10th Cir. 1992). "'A finding of fact is "clearly erroneous" if it is without factual support in the record or if the appellate court, after reviewing all the evidence, is left with a definite and firm conviction that a mistake has been made.'" *Abud-Sanchez*, 973 F.2d at 838 (quoting *Cowles v. Dow Keith Oil & Gas, Inc.*, 752 F.2d 508, 511 (10th Cir. 1985), *cert. denied*, 470 U.S. 816 (1986)).

Mr. Pyron argues the district court erred in including Mr. Altobelli's and Mr. Hutchinson's investments in its calculation of loss because they both have their interests in the projects, were never promised any "money from the working interest," technically received what they had bargained for, and because they did not "believe" they suffered a loss. Therefore, Mr. Pyron argues, the government's proof of loss was insufficient, and the district court erred when it included the investments in the calculation of loss for the purpose of sentencing. We disagree.

The trial record shows the government sustained its burden of establishing Mr. Altobelli's and Mr. Hutchinson's investments constituted loss, and the district court's findings of fact are not clearly erroneous. At trial, Mr. Altobelli and Mr. Hutchinson testified Mr. Pyron solicited their investments, and were told all monies they invested would be used to restore the Pettiquah Project to productive

capacity. However, the government introduced evidence showing Mr. Pyron diverted investor money to pay personal expenses. Also, evidence was introduced showing that Mr. Pyron induced investments in the Pettiquah Project by representing he would rework the wells at the project and would be the operator of the Pettiquah Project. However, evidence was introduced showing Mr. Pyron in fact had nothing to do with any work performed at the Pettiquah Project and had no right to rework or to operate the project.

As a result, because the record supports that the Pettiquah investments represent "money ... unlawfully taken," we hold the government has sustained its burden and the district court was not clearly erroneous in including the Pettiquah investments in its calculation of loss. USSG § 2F1.1 comment. n.7.

Mr. Pyron also challenges the district court's inclusion of Mr. Cameron's investment of $18,412. The district court estimated loss as between $70,000 and $120,000 based on the presentence report's calculation of loss at $93,390.75. Even if we were to subtract the challenged amount, because the total loss still exceeds $70,000, the record supports the district court's estimation of loss as

between $70,000 and $120,000 regardless of Mr. Cameron's investment.[1]

Therefore, because the record supports the district court's estimation of loss regardless of Mr. Cameron's investment, we need not address Mr. Pyron's challenge to the district court's calculation of loss as it relates to Mr. Cameron's investment.

Accordingly, we **AFFIRM** Mr. Pyron's conviction and sentence.

**Entered for the Court**

**WADE BRORBY**
United States Circuit Judge

---

[1] Indeed, when assessing loss with regard to Mr. Cameron's investment, the court seemed to indicate the record supported the loss range of $70,000 to $120,000 regardless of Mr. Cameron's investment by stating: "[I]n any event the record supports the $70,000 to $120,000 fraud guideline range which requires adding of six points to the base offense level." We agree.