**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**MAR 10 1999**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

      Plaintiff-Appellee,

v.

ROBERT L. GIESSE,

      Defendant-Appellant.

No. 98-8027
(D.C. No. 97-CR-077-D)
(District of Wyoming)

**ORDER AND JUDGMENT**[*]

Before **BRORBY,** Circuit Judge, **KELLY,** Circuit Judge, and **McWILLIAMS,** Senior Circuit Judge.

The only issue in this appeal is whether the district court erred in increasing Giesse's offense level by two levels because his victim was a "vulnerable victim" as provided for in the United States Sentencing Guidelines ("USSG") § 3A1.1(b).[1] We conclude the district court did not err in so doing, and therefore affirm.

Pursuant to a plea agreement, Robert L. Giesse pled guilty to Count One of a four

---

[*] This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3

[1] USSG § 3A1.1 appears as Attachment A.

count indictment, which count charged him with mail fraud under 18 U.S.C. § 1341. In the plea agreement, the government agreed to recommend a downward adjustment in Giesse's offense level of three levels for acceptance of responsibility (which the district court later made, although somewhat reluctantly), but the agreement left open any possible upward adjustments in Giesse's offense level. The district court accepted Giesse's plea of guilty and later sentenced him to imprisonment for 30 months to be followed by three years of supervised release, conditioned on payment of a $50.00 special assessment and restitution in the amount of $50,000.00. In imposing sentence, the district court made three two-level upward adjustments in Giesse's offense level: one for more than minimal planning; a second for abuse of a position of trust; and a third pursuant to the "vulnerable victim" provision of USSG § 3A1.1(b). Giesse only appeals the upward adjustment of his offense level based on USSG § 3A1.1(b).

The presentence report recommended a two level increase in Giesse's offense level pursuant to USSG § 3A1.1(b). In this regard, the presentence report read as follows:

> **Victim-Related Adjustments:** Pursuant to USSG 3A1.1(b), a two level increase for a vulnerable victim enhancement appears appropriate. When approached by Giesse to bring her financial portfolio under his management, the victim was a recent widow who was also unsophisticated in financial matters. <u>Prior to her husband's death, the victim had never filled out or signed a check.</u> All financial matters had been left to her husband. The victim was particularly susceptible to Giesse's criminal conduct because he knew she was unsophisticated towards the financial responsibilities she had

- 2 -

suddenly encountered. He admits as much in his defendant's statement through his claim she had spent nearly $115,000 of a $150,000 settlement, and had nothing set up. As a recent widow whose husband had always taken care of financial matters, Giesse clearly understood he was dealing with a vulnerable individual. (Emphasis added.)

Counsel filed an objection to the recommendation in the presentence report that there be a two level upward adjustment under USSG § 3A1.1(b). (It is apparently agreed that the statement contained in that recommendation that "[p]rior to her husband's death, the victim had never filled out or signed a check" was, in fact, incorrect.) The foregoing objection, along with other objections, was heard by the district court at the sentencing hearing. The only witness testifying at the sentencing hearing was the victim, Dorothy Robarge. At the conclusion of that hearing, the district court, after argument of counsel, held that, based on the presentence report and the testimony of Dorothy Robarge, a two level upward adjustment under USSG § 3A1.1(b) was warranted. The court's colloquy in this regard is set forth in Attachment B to the order and judgment.

From the record we learn that Dorothy Robarge, a 40-year old widow when she met Giesse, was the victim of Giesse's criminal activities. At the age of 17, Ms. Robarge dropped out of high school and married her childhood sweetheart, Leroy Robarge. She thereafter assumed the role of homemaker in a marriage that produced four children, while Mr. Robarge was responsible for the income and financial security of the family. In addition to raising their four children, the Robarges assumed the care of Ms. Robarge's developmentally disabled sister and her daughter. Ms. Robarge had a very limited

experience working outside the home, having previously worked as a motel maid and a highway construction flagger, each for a period of only a few months, prior to her husband's death. Mr. Robarge, an electrician at a cement plant, was killed in a work related accident in 1991.

Upon the death of her husband, Ms. Robarge received approximately $100,000.00 in life insurance benefits. She later initiated a wrongful death action against her deceased husband's employer. While this suit was pending, Ms. Robarge first met Giesse. He at the time was a registered securities agent for Mutual of Omaha Investor Services and a registered life insurance agent for Mutual of Omaha, and was doing business as Gem City Investments, Inc. in Laramie, Wyoming. Their introduction occurred through her son, Christopher, who had worked as a clerk at a local Laramie motel and had met Giesse's wife, who also worked at the motel. Christopher met Giesse who would occasionally drop by the motel to visit his wife. Christopher suggested to his mother that she consult with Giesse concerning her investment portfolio. About the same time, Giesse offered Christopher a job as an agent in his office, even though Christopher had no prior experience in this sort of business activity. Ms. Robarge thereafter met with Giesse to discuss her financial situation. Giesse advised Ms. Robarge that her "whole portfolio was at risk." About this time Ms. Robarge settled her lawsuit against her late husband's employer and shortly thereafter turned over about $350,000.00 to Giesse to manage on her behalf, which sum included insurance benefits as well as the settlement monies

realized from her wrongful death claim.  Suffice it to say, Giesse misappropriated about $250,000.00 of Ms. Robarge's monies to his personal use, in the course of which he used the U.S. mail.  All of this came to a head in early 1996 when Ms. Robarge, who had become "suspicious," turned to an attorney for assistance.  An investigation of the matter resulted in the present prosecution of Giesse for mail and wire fraud, and his plea of guilty to the one count of mail fraud.

As indicated, counsel's position on appeal is that the district court erred in increasing Giesse's base offense level by two levels under the "vulnerable victim" provision of USSG § 3A1.1(b).  That guideline provides that an offense level shall be increased by two levels if the defendant knew or should have known that his victim was "unusually vulnerable" due to age, physical or mental condition or if the victim was "otherwise particularly susceptible" to the criminal conduct.

As stated, Giesse pled guilty to Count One of the four count indictment, and the United States, by plea agreement, dismissed the other three counts, so there was no trial.  On acceptance of his plea, the district court referred the case to the probation department for a presentence report.  That report contained a "Victim Impact Statement" in which Ms. Robarge in a narrative letter set forth her chronology of the events, in great detail.  The report also contained a "Prosecutor's Statement," as well as Giesse's "Personal and Family Data," also in considerable detail.  In recommending the increase in Giesse's offense level by two levels under USSG § 3A1.1(b), the presentence report noted that

when Ms. Robarge met Giesse she was a "recent widow who was unsophisticated in financial matters" and was "particularly susceptible" to Giesse's criminal conduct because he knew she was unsophisticated in handling the financial responsibilities she had suddenly encountered.

As indicated, Giesse's counsel filed an objection to the foregoing recommendation and a hearing was held on that objection. The only witness who testified at the sentencing was Dorothy Robarge, the victim, who testified at length about her relationship with Giesse, and was then cross-examined by his counsel.

It was on this state of the record that the district court adopted "the recommendation of the probation officer that the provisions of 3A1.1, paren (b), should apply in this case." In so doing, the district court itemized some of the factors which it took into consideration, namely the "emotional state" of the victim in the aftermath of her husband's accidental death, and the "obvious lack of sophistication" concerning the financial matters that suddenly confronted Ms. Robarge.

It is agreed that in the district court the government had the burden to establish the applicability of USSG § 3A1.1(b). *United States v. Kirk,* 894 F.2d 1162, 1164 (10th Cir. 1990). It is also agreed that on appeal the district court's findings of fact should not be overturned unless clearly erroneous, although the district court's interpretation of § 3A1.1(b) is to be reviewed by us *de novo. United States v. Hardesty,* 105 F.3d 558, 559 (10th Cir. 1997); *United States v. McAlpine,* 32 F.3d 484, 487-488 (10th Cir. 1994).

Our study of this matter convinces us that the district court's findings, i.e., the emotional state of Ms. Robarge after her husband's accidental death and her total lack of sophistication in financial matters, all known to Giesse from the inception of their relationship, are not clearly erroneous and indeed find support in the record. Further, in our view the district court did not misinterpret or misapply § 3A1.1(b). It seems quite apparent to us that Ms. Robarge, under the described circumstances, i.e., her emotional state resulting from her husband's death, her inexperience in handling financial matters, coupled with the fact that she had just acquired about $350,000.00, was a "particularly susceptible" victim. In this general connection, see, for example, *United States v. Tissnolthtos,* 115 F.3d 759, 761 (10th Cir. 1997) ("[t]he focus of the inquiry must be on the victim's personal or individual vulnerability," citing *United States v. Brunson,* 54 F.3d 673, 676 (10th Cir. 1995)); *Brunson,* 54 F.3d at 676 ("As these cases indicate, 'vulnerable victims' are those who are in need of greater societal protection"); *United States v. Creech,* 913 F.2d 780 (10th Cir. 1990) (The focus is on the victim's unusual personal vulnerability, rather than on an assumed vulnerability of a class of which the victim was a member.) Also, and more specifically, in *United States v. Lowder,* 5 F.3d 467, 472 (10th Cir. 1993), we upheld a district court's enhancement of the defendant's offense level based on the vulnerability of the victim, and in so doing we quoted with approval the district court's comment thereon, which was:

> "I can't imagine how we could have a more perfect example
> of a vulnerable victim . . . . They were people who were

inexperienced, they were elderly and they were particularly reliant on these funds for their retirement and for their income and I think they were particularly vulnerable victims."

Judgment affirmed.

ENTERED FOR THE COURT,


Robert H. McWilliams
Senior Circuit Judge

§3Al.l        **Hate Crime Motivation or Vulnerable Victim**
. . . . . . . . . .
(b) If the defendant knew or should have known that a victim of the offense was unusually vulnerable due to age, physical or mental condition, or that a victim was otherwise particularly susceptible to the criminal conduct, increase by 2 levels.


. . . . . . . . . .

*Commentary*

*Application Notes:*


. . . . . . . . . .


2. *Subsection (b) applies to offenses involving an unusually vulnerable victim in which the defendant knows or should have known of the victim's unusual vulnerability. The adjustment would apply, for example, in a fraud case where the defendant marketed an ineffective cancer cure or in a robbery where the defendant selected a handicapped victim. But it would not apply in a case where the defendant sold fraudulent securities by mail to the general public and one of the victims happened to be senile. Similarly, for example, a bank teller is not an unusually vulnerable victim solely by virtue of the teller's position in a bank.*

   *Do not apply subsection (b) if the offense guideline specifically incorporates this factor. For example, if the offense guideline provides an enhancement for the age of the victim, this subsection would not be applied unless the victim was unusually vulnerable for reasons unrelated to age.*

ATTACHMENT B

In looking at the issue of whether the provisions of 3A1.1, paren (b), apply here, the Court believes that if this is an example – if this case is not an example of an instance where this provision of the guideline manual applies, then there is no example that equitably could be made to this Court.

Granted, there are no cases in the Tenth Circuit that will address the issue of whether a widow can be vulnerable, and the fact that this person was widowed and even the fact that she was widowed in a tragic accident of her husband in and of itself would not rise to the level of "vulnerable victim" as established by this guideline provision.

But taking all other factors in consideration, the emotional state of this victim after her husband's death, the obvious lack of sophistication of this witness as exemplified by her testimony here just a moment ago, and the unique position that Mr. Giesse had to manipulate her events through the use of a power of attorney, all make this victim about as vulnerable as any victim could be.

This Court has been reluctant to apply this provision of the guidelines in the past because oftentimes people who are victims of fraudulent schemes allowed their own greed and stupidity to make them victims.

Now, that is not the case here. The victim here is not a stupid woman; she's simply unsophisticated. And there's no evidence to believe that she was trying to get something for nothing or that she was greedy. She thought she was doing something prudent, relying upon a person who had authority to do business with a well known, nationally renowned investment company. And she gave this defendant the power of attorney, and with that legal artifice he had as much of a strangle hold on this victim as one could obtain. He had an exquisite position of trust and really dominion over the financial well-being of this victim.

It would be virtually impossible, even for a person with sophistication, having granted that extraordinary power by that instrument, to even maintain a good understanding of what their financial position was; and that would certainly be true of a person of such limited skill on financial matters as is this victim.

For the reasons I've just stated, the Court believes that there is ample justification in the record to support the recommendation of the probation office that the provisions of 3A1.1, paren (b), should apply in this case, and the Court will apply them.