**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Douglass NELSON, Defendant–Appellant.**

No. 94–1171.

United States Court of Appeals,
Tenth Circuit.

April 27, 1995.

Rehearing Denied July 18, 1995.

---

Charlotte J. Mapes, Asst. U.S. Atty. (Henry L. Solano, U.S. Atty.; Kyra Jenner, Asst. U.S. Atty., on the briefs) for plaintiff-appellee.

Neil MacFarlane, Westminster, CO, for defendant-appellant.

Before BRORBY, GODBOLD * and HOLLOWAY, Circuit Judges.

* The Honorable John Cooper Godbold, Senior Circuit Judge for the Eleventh Circuit, sitting by designation.

BRORBY, Circuit Judge.

The defendant, Douglass Nelson, was convicted by a jury of one count of equity skimming, *see* 12 U.S.C. § 1709–2, and seven counts of mail fraud, *see* 18 U.S.C. § 1341.[1] He brings this appeal raising several issues concerning his conviction and sentence. We have jurisdiction pursuant to 28 U.S.C. § 1291, and affirm in part, and remand in part.

### A.

■ Mr. Nelson first argues the district court erred in enhancing his offense level by two points for obstruction of justice. *See* U.S.S.G. § 3C1.1. A district court's application of the Sentencing Guidelines to the facts of a particular case is entitled to due deference and will be reversed only if clearly erroneous. *United States v. Urbanek,* 930 F.2d 1512, 1514 (10th Cir.1991).

■ In response to probation officer Bedell's inquiry as to whether Mr. Nelson "had" a bank account, he replied that he did not. The district court found Mr. Nelson, in giving this response, obstructed justice.[2]

The undisputed evidence presented at the sentencing hearing regarding the bank account established the following: (1) Mr. Nelson instructed Patrick Lee, his codefendant, to open a bank account to be used by Mr. Nelson in the name of Avid Telemarketing; (2) Mr. Lee was the owner and sole signatory according to the account application form; and (3) Mr. Nelson was the only person who ever used the account. He did this in two ways: by instructing Mr. Lee to sign a large number of blank checks for Mr. Nelson to use; and by personally signing checks with Mr. Lee's name and permission. At oral argument before this court, counsel for Mr. Nelson conceded he had full use of the account and made all the withdrawals and deposits on that account for a period of four years. Mr. Nelson argues these facts do not support a finding he "had" a bank account or that his statement, if false, was material. Thus, Mr. Nelson argues his response that he did not have a bank account did not constitute an obstruction of justice.

The 1988 version of § 3C1.1, which was applied in this case, provided: "If the defendant willfully impeded or obstructed, or attempted to impede or obstruct the administration of justice during the investigation or prosecution of the instant offense, increase the offense level ... by 2 levels." U.S.S.G. § 3C1.1 (1988). The application notes to this section inform that "furnishing material falsehoods to a probation officer in the course of a presentence or other investigation for the court" may constitute obstruction of justice. U.S.S.G. § 3C1.1, comment. (n.1(e)) (emphasis omitted). Thus, there is no doubt that § 3C1.1, as it existed in 1988, is potentially applicable to the conduct at issue here.

Applying that section, we have little difficulty concluding Mr. Nelson's representation he did not have a bank account constituted false information. While it is true Mr. Lee, not Mr. Nelson, was the owner of the account and its only signatory, it is also true the account and its ownership were established at Mr. Nelson's direction. Furthermore, the evidence established the account was in fact used by and for the sole benefit of Mr. Nelson. Though not the legal owner of the account, for all practical purposes the account was Mr. Nelson's. As such, the district court's finding that Mr. Nelson provided false information in stating he did not have a bank account was not clearly erroneous.

■ Mr. Nelson appears to argue that if false, the statement was immaterial because there was very little money in the Avid account. The current version of the sentencing guidelines clarify the 1988 guidelines by providing the following definition of the term

---

1. Mr. Nelson and his codefendant were tried together. The facts underlying the charges against Mr. Nelson are set forth in *United States v. Lee,* 54 F.3d 1534 (10th Cir.1995).

2. The district court also found Mr. Nelson had obstructed justice by failing to reveal his employ-

ment history with a company known as Avid Telemarketing. We need not address Mr. Nelson's arguments pertaining to this issue because we conclude his representations concerning his bank account are sufficient to support the district court's conclusion he had obstructed justice.

"material" as used in § 3C1.1: A material statement is one "that, if believed, would tend to influence or affect the issue under determination." U.S.S.G. § 3C1.1, comment. (n.5). The district court concluded:

> There's no question that those false statements were material false statements. A probation report is required to reveal to the Court accurate financial information concerning the defendant. And the reason for that is primarily to see whether he's capable of paying a fine, and primarily to see whether he's capable of making restitution. A failure to reveal bank accounts . . . is material in the sense that it misleads the probation officer in making estimations of the assets of the defendant, and it also prevents the probation officer from following leads.

We agree with this reasoning. When a defendant provides false information regarding his financial assets, he "makes it impossible to reasonably determine whether [he] is able to pay a fine within the established guideline range." *United States v. Ballard,* 16 F.3d 1110, 1113 (10th Cir.), *cert. denied,* — U.S. ——, 114 S.Ct. 2762, 129 L.Ed.2d 876 (1994). The amount of money in the account does not change our conclusion. A material statement is one that, if believed, would *tend to influence or affect* the imposition of sentence. U.S.S.G § 3C1.1, comment n. 5 (1994). A small amount of money could form the basis of an award of restitution or imposition of a fine. In addition, a defendant's financial history, insofar as it is revealed by examining bank accounts, could provide valuable information to a sentencing court in determining the defendant's ability to pay restitution. Finally, as the district court observed, failing to disclose the existence of a bank account could be material in that it prevents law enforcement officials from following possible leads establishing the financial status of a defendant. As such, the failure to disclose the existence of a bank account, regardless of the amount of money in the account at a given time, could influence or affect the sentencing court's decision and is, therefore, material under § 3C1.1. Therefore, we conclude the district court did not err in enhancing Mr. Nelson's sentence by two points for obstruction of justice.

### B.

██ Next, Mr. Nelson argues the district court erred in refusing to depart downward in fixing his criminal history category. A discretionary refusal to depart downward is not reviewable by this court unless it appears from the record the sentencing court erroneously believed the Guidelines did not permit a downward departure. *E.g. United States v. Barrera–Barron,* 996 F.2d 244, 245 (10th Cir.), *cert. denied,* — U.S. ——, 114 S.Ct. 358, 126 L.Ed.2d 321 (1993). If the record is ambiguous concerning the district court's awareness of its discretion to depart downward, we presume the court was aware of its authority. *United States v. Rodriguez,* 30 F.3d 1318, 1319 (10th Cir.1994). The record indicates the sentencing court was aware of its discretionary power to depart downward in fixing Mr. Nelson's criminal history category. Thus, we lack jurisdiction to consider this allegation of error.

### C.

██ Mr. Nelson argues the district court's factual finding that he did not accept responsibility for his crimes is clearly erroneous. *See United States v. Hollis,* 971 F.2d 1441, 1459 (10th Cir.1992), *cert. denied,* — U.S. ——, 113 S.Ct. 1580, 123 L.Ed.2d 148 (1993). The defendant bears the burden of establishing his entitlement to a reduction under § 3E1.1. *United States v. McAlpine,* 32 F.3d 484, 489 (10th Cir.), *cert. denied,* — U.S. ——, 115 S.Ct. 610, 130 L.Ed.2d 520 (1994). The argument is, at best, spurious.

Section 3E1.1 of the 1988 Guidelines provides: "If the defendant clearly demonstrates a recognition and affirmative acceptance of personal responsibility for his criminal conduct, reduce the offense level by 2 levels." Application Note 4 categorically states: "An adjustment under this section is not warranted where a defendant . . . obstructs the trial or the administration of justice (*see* § 3C1.1), regardless of other factors." U.S.S.G. § 3E1.1, comment. (n.4) (1988).

██ Mr. Nelson flatly asserts he was entitled to this adjustment because he admitted

certain aspects of the crimes alleged. The fact remains, however, he did not admit to committing those crimes. Furthermore, not only did Mr. Nelson put the government to its burden of proof by denying an essential element of the crime of equity skimming, he has not pointed to any evidence in the record evincing his belated admission of guilt or expression of remorse. Under these facts, it cannot be said that by conceding some facts, denying others, and denying commission of the crimes charged, Mr. Nelson accepted responsibility for those crimes. Moreover, Application Note 4, which is authoritative, *see Stinson v. United States*, —— U.S. ——, 113 S.Ct. 1913, 123 L.Ed.2d 598 (1993), indicates that regardless of the facts of Mr. Nelson's case, he is not entitled to a reduction for acceptance of responsibility given that his sentence was enhanced under § 3C1.1. As such, we conclude the district court's finding of no acceptance of responsibility was not clearly erroneous.

### D.

Mr. Nelson next argues he was denied due process of law as a result of three decisions of the district court. Those decisions related to the scheduling of trial, sending exhibits to the jury, and continuing his sentencing hearing. We consider each allegation in turn.

### 1.

On November 19, 1993, the district court set Mr. Nelson's trial date as December 6, 1993, noting "[t]he defendants have had five months to prepare for trial, which is a pretty long time in a case of this sort." At a hearing held on December 1, 1993, the trial was continued until February 7, 1994. On January 14, 1994, without prior notice to the parties, the district court ordered that the eight day trial would commence on January 24, 1994. Mr. Nelson twice moved for a reinstatement of the February 7 trial date. Those motions were denied. Mr. Nelson argues he was denied due process as a result of the date of trial being moved up by two weeks.

■ Claims of deprivation of due process rights require the accused to make a specific showing of identifiable prejudice affecting his substantial rights. *See United States v. Comosona*, 614 F.2d 695, 696–97 (10th Cir. 1980). Mr. Nelson has raised a number of issues and factual scenarios in an attempt to demonstrate the prejudicial impact of the district court's decision. We have reviewed those issues and conclude they do not support a showing of prejudice.

■ Mr. Nelson's trial strategy was to admit virtually all the underlying facts of the case but argue, based on his interpretation of Colorado law, that the manner in which he assumed the twenty-three properties created no legal obligation upon him to pay the mortgages on those properties. In short, Mr. Nelson's defense was while he willfully engaged in the conduct alleged by the government, he did not know that conduct amounted to a violation of the law and thus, he should be found innocent. There is no allegation this ignorance-of-the-law-is-an-excuse defense would have been any different had the trial occurred two weeks later than it did. Finally, given that the district court properly refused to instruct the jury that ignorance of the law is an excuse, we fail to see how, had Mr. Nelson had two additional weeks to develop this theory, the outcome of trial would have been any different. Thus, we conclude Mr. Nelson was not denied due process of law as a result of the district court's decision to move the date of trial forward by two weeks.

### 2.

Counsel for Mr. Nelson argues, in a highly misleading fashion, that Mr. Nelson was denied due process as a result of the district court's unwillingness to submit *copies* of exhibit SS to the jury. Exhibit SS was a copy of the Colorado law that Mr. Nelson purportedly relied on in concluding his conduct was legal. "The transmittal of exhibits to the jury is ordinarily a matter within the discretion of the district court and will not be reversed in the absence of clear prejudice to the defendant." *United States v. de Hernandez*, 745 F.2d 1305, 1308 (10th Cir.1984).

■ Counsel for Mr. Nelson attempts to establish prejudice by emphasizing the importance of this exhibit to Mr. Nelson's de-

fense and asserting that given "the complex nature of the case, the jury *needed* to review the law so it could understand Nelson's state of mind." Nowhere in his brief, however, does counsel for the defense alert the court to the fact that all 251 exhibits in evidence—including exhibit SS—were actually given to the jury. The district court did not simply refuse to give exhibit SS to the jury as counsel implies but rather, refused to make twelve copies of it for the jurors. Having had the exhibit before them, we can see absolutely no merit to this argument.

### 3.

■■■ Next, Mr. Nelson contends he was denied due process as a result of the district court's continuance of his sentencing hearing. District courts have broad discretion in matters of continuances, even when Sixth Amendment issues are implicated, *United States v. Mendoza–Salgado*, 964 F.2d 993, 1016 (10th Cir.1992), and such decisions only will be reviewed for abuse of that discretion, *Scott v. Roberts*, 975 F.2d 1473, 1475 (10th Cir.1992).

■■■ At his sentencing hearing, Mr. Nelson disputed the government's figures regarding loss for lack of proof. The loss to HUD on the twenty-three properties included in the Counts of conviction was $873,415. The government determined, however, the loss attributable to all of Mr. Nelson's relevant conduct was $1,925,352 and related to an additional thirty-three HUD-insured properties not included in the Counts of conviction. The district court continued the sentencing hearing in order to afford the government the opportunity to arrange for its witness to testify regarding loss, noting that it was doing so because Mr. Nelson had never indicated he would be challenging the government's figures at the hearing.[3]

Mr. Nelson simply asserts the decision to continue the sentencing hearing denied him due process of law. He fails, however, to venture any opinion as to how that right was denied. Moreover, he makes no attempt to explain how or why the district court's decision was arbitrary, unreasonable, an abuse of discretion, or prejudicial. Therefore, we conclude Mr. Nelson has failed to show the continuance denied him due process of law.

### E.

Mr. Nelson argues his convictions for mail fraud on Counts II, III and IV must be set aside "because the alleged acts involved Patrick Lee, not Nelson, and Lee was found not guilty of those charges." The thrust of this argument is those three counts alleged mail fraud by Mr. Nelson and his codefendant, Mr. Lee, and if Mr. Lee was found not guilty on those counts, the jury could not, as a matter of law, find Mr. Nelson guilty. No authority is cited in support of this argument.

■■■ A charge of mail fraud requires proof of a scheme to defraud and use of the mails in furtherance of the scheme. *United States v. Hinkle*, 37 F.3d 576, 578 (10th Cir.1994). A lone individual may commit mail fraud.[4] In addition, as long as one participant in a fraudulent scheme causes the mails to be used in execution of the fraud, all other knowing participants in the scheme may be liable for the use of the mails. *United States v. Gann*, 718 F.2d 1502, 1504–05 (10th Cir.1983), *cert. denied*, 469 U.S. 863, 105 S.Ct. 200, 83 L.Ed.2d 132 (1984).

■■■ The fact Mr. Lee was acquitted of the mail fraud counts does not necessarily create any inconsistency with Mr. Nelson's convictions since mail fraud requires acts by only one individual. Moreover, to the extent

---

3. When the sentencing hearing resumed, counsel for Mr. Nelson stated:

> Your Honor, I met with [the Assistant United States Attorney] yesterday, went over most of the documentation that she has, and it's obvious the government can establish that there's more than $1,000,001.00 involved in the losses.... So we're going to stipulate that the government can prove damages in the range of

1 million to 2 million, which is the same for the guideline purposes.

4. Mr. Nelson was not charged with conspiracy to commit mail fraud. As such, the rule that if one coconspirator is convicted of conspiracy while all other coconspirators are acquitted, the conviction must be set aside, *e.g., United States v. Suntar Roofing, Inc.*, 897 F.2d 469, 476 (10th Cir. 1990), is inapposite.

any potential inconsistency among these verdicts can be imagined, we will not speculate as to possible explanations for those verdicts nor reverse those convictions based on inconsistency.

> "The most that can be said in such cases is that the verdict shows that either in the acquittal or the conviction the jury did not speak their real conclusions, but that does not show that they were not convinced of the defendant's guilt. We interpret the acquittal as no more than their assumption of a power which they had no right to exercise, but to which they were disposed through lenity."
>
> That the verdict may have been the result of compromise, or of a mistake on the part of the jury, is possible. But verdicts cannot be upset by speculation or inquiry into such matters.

*Dunn v. United States,* 284 U.S. 390, 393, 52 S.Ct. 189, 190, 76 L.Ed. 356 (1932) (quoting *Steckler v. United States,* 7 F.2d 59, 60 (C.C.A.2 1925)); *see also, United States v. Powell,* 469 U.S. 57, 66, 69, 105 S.Ct. 471, 477, 479, 83 L.Ed.2d 461 (1984) (noting the rule of *Dunn* "has stood without exception in [the Court] for 53 years" and concluding, based on "[t]he fact that the inconsistency may be the result of lenity, coupled with the Government's inability to invoke review ... that inconsistent verdicts should not be reviewable.").[5]

Finally, Mr. Nelson's contention the mail fraud charges concerned the conduct of Mr. Lee, and not himself, merits no discussion. We will not disturb the jury's verdicts on grounds of inconsistency.

### F.

■ Lastly, Mr. Nelson argues the district court erred in ordering the sentence for equity skimming and the sentences for mail fraud to be served consecutively and in ordering the periods of supervised release for those offenses to run consecutively to each other. Mr. Nelson offers neither a factual nor a legal argument in support of these contentions.

U.S.S.G. § 5G1.2(d) (1988) provides:

> If the sentence imposed on the count carrying the highest statutory maximum is less than the total punishment, then the sentence imposed on one or more of the other counts shall run consecutively, but only to the extent necessary to produce a combined sentence equal to the total punishment. In all other respects sentences on all counts shall run concurrently, except to the extent otherwise required by law.

"Total punishment" is defined as that "determined by the adjusted combined offense level." U.S.S.G. § 5G1.2(d), comment.

■ The district court determined Mr. Nelson adjusted combined offense level was 57–71 months. Equity skimming and mail fraud carry the same statutory maximum sentence of five years. Thus, after sentencing Mr. Nelson to sixty-month concurrent sentences for the mail fraud counts, the district court correctly sentenced him to an eleven-month equity skimming sentence, to be served consecutively, in order to produce a combined sentence equal to the total punishment of seventy-one months. Thus, the district court properly applied the Guidelines, and no error was committed.

Mr. Nelson argues the district court erred in ordering consecutive terms of supervised release. He asserts once the total period of imprisonment is reached, which has been done here, all other aspects of sentencing must run concurrently. The government, somewhat surprisingly, conceded this point at oral argument based on an unpublished opinion of this court. *United States v. Saahir,* No. 94–1112, 1995 WL 72389 (10th Cir. Feb. 22, 1995). Accepting that concession, Mr. Nelson's case must be remanded for resentencing as to the terms of supervised release.

The judgment of conviction is **AFFIRMED,** and the case **REMANDED** to the district court with instructions to vacate Mr.

---

5. While both *Dunn* and *Powell* involved claims of inconsistent verdicts pertaining to a single defendant, the Supreme Court has applied the rule of *Dunn* to cases involving inconsistent verdicts as to different defendants. *See United States v. Dotterweich,* 320 U.S. 277, 279, 64 S.Ct. 134, 135–36, 88 L.Ed. 48 (1943).

Nelson's sentence and resentence him in a manner consistent with this opinion.