**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**JUN 16 1997**

**PATRICK FISHER**
**Clerk**

UNITED STATES COURT OF APPEALS

FOR THE TENTH CIRCUIT

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

v.

MATTHEW D. MITCHELL,

Defendant-Appellant.

No. 96-6292
(D.C. No. CR-96-75-C)
(W.D. Okla.)

ORDER AND JUDGMENT[*]

Before BRORBY, BARRETT, and LUCERO, Circuit Judges.

After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. See Fed. R. App. P. 34(a); 10th Cir. R. 34.1.9. The case is therefore ordered submitted without oral argument.

---

[*]     This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

I.

For a period of approximately five months in 1995, Donna Perron and other members of her family received hundreds of obscene and threatening telephone calls from defendant, who called the 1-800 number for the Perrons' family trucking business, which was operated out of their home in Vermont. Defendant, who lived in Oklahoma, was eventually identified as the caller. He was charged with, and pleaded guilty to, one count of making a threatening interstate communication in violation of 18 U.S.C. § 875(c). The district court sentenced him to twenty-one months' imprisonment, followed by three years of supervised release, and fined him $3,000, due and payable immediately. The district court arrived at this sentence after departing upward two levels from the guideline range calculated in the presentence report.

On appeal, defendant raises the following challenges to his sentence: (1) the district court erred in departing upward from the Sentencing Guidelines; (2) the court should have given defendant a reduction in his sentence for acceptance of responsibility; and (3) the court should not have ordered that the fine be paid immediately, with interest accruing from the date of sentencing. We will address each of these matters in turn.

II.

We review the district court's decision to depart from the Sentencing Guidelines under an abuse of discretion standard. See Koon v. United States, 116 S. Ct. 2035, 2043 (1996). A district court must impose a sentence within the Guidelines unless it determines "that there exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines that should result in a sentence different from that described." 18 U.S.C. § 3553(b). "Before a departure is permitted, certain aspects of the case must be found unusual enough for it to fall outside the heartland of cases in the Guideline. . . . District courts have an institutional advantage over appellate courts in making these sorts of determinations, especially as they see so many more Guidelines cases than appellate courts do." Koon, 116 S. Ct. at 2046-47.

In determining that defendant's offense went beyond the "heartland" of typical cases involving the communication of a threat, the district court found that three aspects of the offense were not adequately considered by the Guidelines: (1) defendant's extreme conduct; (2) the loss of business caused by defendant's incessant use of the 1-800 number; and (3) the extreme psychological injury inflicted upon Mrs. Perron. Each of these factors is an "encouraged factor" under the Guidelines. See Koon, 116 S. Ct. at 2045; U.S.S.G. §§ 5K2.5, 5K2.8, 5K2.3.

Therefore, the court was authorized to depart based on each of these factors, so long as the Sentencing Commission did not already take them into account in establishing the offense level for communication of a threat under U.S.S.G. § 2A6.1. See Koon, 116 S. Ct. at 2045. In deciding whether the Sentencing Commission took these factors into account in § 2A6.1, we are guided by the Commission's explicit statement that, because communication of a threat can involve a wide range of conduct, the Commission was not able to include all potentially relevant circumstances in the base offense level under § 2A6.1, so the sentencing court should look at the departure factors set forth in Chapter 5, Part K of the Guidelines to determine whether a departure is warranted. U.S.S.G. § 2A6.1 application note 1.[1]

## A.

One of the departure factors set forth in the Guidelines is extreme conduct of the defendant. "If the defendant's conduct was unusually heinous, cruel, brutal, or degrading to the victim, the court may increase the sentence above the guideline range to reflect the nature of the conduct. Examples of extreme conduct include torture of a victim, gratuitous infliction of injury, or prolonging of pain or humiliation." U.S.S.G. § 5K2.8.

---

[1] All references to the Sentencing Guidelines are to the 1995 version.

The record reflects that defendant made over six hundred calls to the Perrons' 1-800 number during a five-month period. Mrs. Perron stated that defendant would call fifteen to twenty times in one day until he received sexual satisfaction and then he would call sporadically for the next several days. He called both during the day and in the middle of the night. On one day, he called over one hundred times. During the calls, defendant would describe in graphic detail the sexual acts he intended to perform on Mrs. Perron and would ask her questions about what she was wearing. On occasion, defendant spoke to one of the Perron children, to Mr. Perron, or to Mrs. Perron's sister-in-law; he described to each of them the acts he intended to perform on Mrs. Perron. In early September 1995, defendant told Mrs. Perron he was coming to Vermont. Although the Perrons considered changing the telephone number, they could not do so because the 1-800 number was vital to their business. The family also used the 1-800 number for their personal calls, and were reluctant to take the phone off the hook after business hours, especially because Mrs. Perron's elderly father was seriously ill at the time.

Citing to the number of calls made, the words defendant said during the calls, the family members besides Mrs. Perron who were subjected to the calls, the length of time the calls occurred, the use of a business number (which meant defendant had a captive audience), and defendant's knowledge of the effect he

was having on Mrs. Perron, the district court found that defendant's conduct involved the prolonging of pain and humiliation. "[T]his, in my mind, is equal to a reign of terror every bit as offensive as physical violence. This is an offense which is defined as a crime of violence. It is, in this case, carried out in a violent manner, in my view." R. Vol. III, Tr. at 28.

Although the district court's findings are well-supported by the record, defendant argues that extreme conduct is not an appropriate factor for departure here, because U.S.S.G. § 2A6.1 already takes into account some of the aspects of defendant's conduct. Specifically, defendant argues, the guideline takes into account the number of calls involved in the offense, by providing for a four-level reduction of the base offense level if there was no conduct evidencing an intent to carry out the threat and "the offense involved a single instance evidencing little or no deliberation." U.S.S.G. § 2A6.1(b)(2).

The structure of § 2A6.1 does suggest that, in establishing a base offense level for communicating a threat, the Sentencing Commission gave some consideration to the number of communications involved in the "heartland" of these offenses. A district court may depart from the guideline range, however, if it finds the offense involves an aggravating factor "of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines." 18 U.S.C. § 3553(b) (emphasis added). The district court did not

err in concluding that, by making over six hundred telephone calls to the Perrons' 1-800 number, defendant engaged in conduct of a degree not taken into consideration by the Sentencing Commission in formulating the base offense level under § 2A6.1. Moreover, the district court's finding of extreme conduct was not based on merely the number of telephone calls made, but on a variety of other facts. Therefore, we conclude that the district court did not abuse its discretion in relying on defendant's extreme conduct as a basis for an upward departure. See, e.g., United States v. Taylor, 88 F.3d 938, 946 (11th Cir. 1996) (upholding departure from guideline range established in § 2A6.1 based on defendant's "prolonged, unrelenting behavior, much of which was designed to humiliate the [victims]", which constituted extreme conduct under § 5K2.8); United States v. Gary, 18 F.3d 1123, 1130 (4th Cir. 1994) (concluding that court did not abuse discretion in relying on defendant's extreme conduct, which prolonged the victim's pain and humiliation, to depart upwardly from range established under § 2A6.1).

B.

We also uphold the district court's reliance on the Perrons' loss of business as a ground for departure. The Guidelines provide that "[i]f the offense caused property damage or loss not taken into account within the guidelines, the court may increase the sentence above the authorized guideline range."

U.S.S.G. § 5K2.5. The record reflects that defendant's repeated use of the 1-800 business number interfered with the ability of customers, as well as the Perrons' own drivers, to contact the business about scheduling transportation. The business sustained losses in excess of five thousand dollars in each of the months of June and July 1995, as compared with the months of June and July 1994. In addition, defendant's continual harassment so debilitated Mrs. Perron that she had to hire a part-time secretary to manage many of the day-to-day activities of the business, at a cost of more than two thousand dollars. Thus, the evidence supports the district court's determination that the Perrons suffered property loss not taken into account by the guideline range established under § 2A6.1. The district court did not abuse its discretion in relying on this factor for an upward departure. See United States v. Flinn, 987 F.2d 1497, 1505 (10th Cir. 1993) (holding that hotel's loss of $2,500 not taken into account in computing offense level justified upward departure under § 5K2.5).

C.

We turn, then, to the final factor relied on by the district court for departure: extreme psychological injury to the victim. "If a victim suffered psychological injury much more serious than that normally resulting from commission of the offense, the court may increase the sentence above the authorized guideline range." U.S.S.G. § 5K2.3. Defendant argues that departure

-8-

based on this factor was not proper here because the district court failed to make the findings necessary to apply § 5K2.3, and because the record did not establish extreme psychological injury to Mrs. Perron.

In United States v. Okane, 52 F.3d 828 (10th Cir. 1995), we stated as a general rule that, "before a sentencing court may depart upwards under [§ 5K2.3], there must be some evidence of: (1) the nature of the injury actually suffered by the victims in this case, and (2) the psychological injury normally resulting from the commission of the offense." Id. at 835 (quotation omitted). The record here, while replete with evidence of the psychological injury suffered by Mrs. Perron and her family as a result of defendant's "reign of terror," R. Vol. III, Tr. at 28, does not contain evidence of the psychological injury a victim could be expected to suffer from a typical offense of communicating a threat, see United States v. Anderson, 5 F.3d 795, 805 n.17 (5th Cir. 1993) (comparing psychological injury suffered by victim of extreme sexual abuse to that suffered by "victims of 'ordinary' sexual abuse crimes"). Despite the government's failure to produce evidence of the psychological injury normally resulting from the communication of a threat, see Okane, 52 F.3d at 835 (noting that government has burden of proof), and the resulting failure of the court to make a finding on this matter, we do not think a remand is necessary here.

First, we note that several circuits have recognized that extreme conduct of the defendant and extreme psychological injury to the victim are often related.

> Although not always the case, here the heinousness of the conduct is in some respects the other side of the same coin as the victim's psychological harm, and the outrageousness of the defendants' actions in turn supports the district court's departure on the psychological injury grounds. . . . In these circumstances, because the defendants' conduct was extreme for sexual abuse offenses, the district court could conclude that [the victim's] psychological harm was also greater than that suffered by most victims of sexual abuse."

Anderson, 5 F.3d at 805; see also United States v. Pergola, 930 F.2d 216, 219 (2d Cir. 1991) (upholding court's finding of extreme psychological injury to victim in light of the "prolonged and repeated misconduct" that lead to the injury).

Moreover, sending this case back to the district court to elicit additional evidence and make additional findings of fact about the psychological injury normally resulting from the offense of communicating a threat would be an empty exercise. Based on the record before us, we have no doubt that the district court would impose the same sentence on remand. "As we understand our appellate responsibility as set out in Williams,[2] we should not remand if we are satisfied, as we are, that the district court would impose the same, reasonable sentence if

---

[2]    Williams v. United States, 503 U.S. 193 (1992). In Williams, the Court held that even if a district court relies on an improper ground in departing from the guideline range, an appellate court can affirm if it is persuaded that the district court would have imposed the same sentence absent the erroneous factor and if it is satisfied that the sentence imposed is reasonable. 503 U.S. at 202-03.

we required it to articulate with the detail specified in Jackson[3] and its progeny." United States v. O'Dell, 965 F.2d 937, 939 (10th Cir. 1992). Defendant has not challenged the degree of the district court's departure, and our review of the record establishes that the degree of departure here was reasonable. Therefore, we affirm the district court's decision to depart upward two levels from the guideline range.

III.

Next, we consider whether the district court erred in refusing to give defendant a two-level reduction in his offense level for acceptance of responsibility under U.S.S.G. § 3E1.1. "District courts have broad discretion to grant or deny the reduction for acceptance of responsibility, and thus, our review is under the clearly erroneous standard." United States v. Robertson, 45 F.3d 1423, 1449 (10th Cir.) (citation omitted), cert. denied, 116 S. Ct. 133 (1995).

"The defendant bears the burden of establishing his entitlement to a reduction under § 3E1.1." United States v. Nelson, 54 F.3d 1540, 1544 (10th Cir.

---

[3]     United States v. Jackson, 921 F.2d 985 (10th Cir. 1990) (en banc). In Jackson, we held that a sentencing court must give a sufficient explanation for its departure, as follows: "First, a district court must explain why the Guidelines sentence is inadequate. Second, the court must identify a sufficient factual basis for departure. Third, the court must explain why that specific degree of departure is reasonable." 921 F.2d at 989.

1995).  A defendant who pleads guilty is not automatically entitled to a reduction in his sentence for acceptance of responsibility.  See U.S.S.G. § 3E1.1 application note 3.  To receive a reduction of his sentence, the defendant must show "recognition and affirmative acceptance of personal responsibility for his criminal conduct."  United States v. McAlpine, 32 F.3d 484, 489 (10th Cir. 1994) (quotation omitted).  A defendant need not affirmatively admit relevant conduct beyond the offense of conviction to obtain a reduction under § 3E1.1; he may remain silent with respect to other relevant conduct.  U.S.S.G. § 3E1.1, application note 1(a).  But, "a defendant who falsely denies, or frivolously contests, relevant conduct that the court determines to be true has acted in a manner inconsistent with acceptance of responsibility."  Id.

The district court found that defendant's responses to the court's questions at the plea hearing were misleading and showed that defendant had not accepted responsibility for his conduct.  Among other things, defendant blamed many of the calls on other men with whom he worked.  He described himself as just a follower who got caught up in the situation, and indicated that he made only a few calls to the 1-800 number.  Mrs. Perron, however, stated that the same person made all of the calls, and she readily identified defendant's voice as that of the caller.  Based upon the record before us, we conclude that the district court did

not clearly err in denying defendant a sentence reduction for acceptance of responsibility.

IV.

Finally, we consider defendant's challenge to the fine imposed by the district court. The Guidelines require sentencing courts to impose fines "in all cases, except where the defendant establishes that he is unable to pay and is not likely to become able to pay any fine." U.S.S.G. § 5E1.2(a). The district court here imposed a fine of $3,000, which was $1,000 below the minimum amount authorized for defendant's offense level under § 5E1.2(c)(3). Defendant does not contest the amount of the fine, just the manner of payment selected by the district court: the court ordered that the entire amount be due and payable immediately and that interest begin to accrue from the date of sentencing. We review the court's imposition of a fine under an abuse of discretion standard. See United States v. Meuli, 8 F.3d 1481, 1487 (10th Cir. 1993).

The Guidelines direct the sentencing court to establish an installment schedule for payment of the fine, rather than impose a lump sum fine, "[i]f the defendant establishes that payment of the fine in a lump sum would have an unduly severe impact on him or his dependents." U.S.S.G. § 5E1.2(g). Thus, defendant bears the burden of proving that he cannot pay the fine imposed by the district court. See United States v. Vincent, 20 F.3d 229, 240 (6th Cir. 1994);

United States v. Quan-Guerra, 929 F.2d 1425, 1427 (9th Cir. 1991); cf. Meuli, 8 F.3d at 1487 ("Defendant contends that he met his burden of establishing his inability to pay a fine.").

In imposing the lump sum fine and ordering that interest thereon begin accruing immediately, the court noted that defendant had an ability to work, a past history of work, and was in the process of settling a worker's compensation claim. The court found that defendant had the ability to pay the fine immediately, or at least to pay interest thereon. Defendant, in turn, has not met his burden of establishing that having to pay the entire fine immediately, or at least interest thereon, would have an "unduly severe impact on him or his dependents," U.S.S.G. § 5E1.2(g). We, therefore, conclude that the district court did not abuse its discretion in imposing the fine at issue. See United States v. Doyan, 909 F.2d 412, 414 (10th Cir. 1990) (holding that court did not abuse discretion even though it was "clear that the fine is likely to constitute a significant financial burden for [the] defendant[, considering his] income and resources").

V.

In sum, we conclude that, in imposing sentence on defendant, the district court did not abuse its discretion in departing upward from the guideline range, did not clearly err in refusing to reduce defendant's sentence for acceptance of responsibility, and did not abuse its discretion in imposing a $3,000 fine due and

payable immediately. Therefore, we AFFIRM the judgment of the United States

District Court for the Western District of Oklahoma.


Entered for the Court


Wade Brorby
Circuit Judge