F I L E D
**United States Court of Appeals**
**Tenth Circuit**

**NOV 25 1997**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

v.

MONICA SHEVETTE CARTER,

Defendant-Appellant.

No. 96-6276
(W. District of Oklahoma)
(D.C. No. CR-95-169-A)

**ORDER AND JUDGMENT**[*]

Before **SEYMOUR**, Chief Judge, **McKAY** and **MURPHY**, Circuit Judges.

Appellant Monica Shevette Carter was charged with conspiracy to

distribute cocaine base, in violation of 21 U.S.C. § 846, possession with intent to

distribute cocaine base, in violation of 21 U.S.C. § 841(a)(1), and four counts of

distribution of cocaine base, also in violation of 21 U.S.C. § 841(a)(1). A jury

convicted Carter of the conspiracy charge and the four counts of distribution but

acquitted her of the one count of possession with intent to distribute. The

---

[*]This order and judgment is not binding precedent, except under the
doctrines of law of the case, res judicata and collateral estoppel. The court
generally disfavors the citation of orders and judgments; nevertheless, an order
and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

presentence report ("PSR") calculated Carter's base offense level at 38 based on 2513 grams of cocaine base and six grams of marijuana. The PSR recommended the district court apply a two-level enhancement for possession of a firearm pursuant to U.S.S.G. § 2D1.1(b)(1) and a two-level enhancement for obstruction of justice pursuant to U.S.S.G. § 3C1.1. Following a sentencing hearing, the district court sentenced Carter to imprisonment for a term of 360 months on each count, to be served concurrently, and to five years of supervised release on each count, to run concurrently.

On appeal, Carter contends the district court erred by (1) refusing to make a downward departure from the Sentencing Guidelines; (2) applying a two-level enhancement for possession of a firearm; and (3) considering the testimony of Kenneth Patterson when calculating the drug quantities attributable to her. This court affirms.

## A. Downward Departure

Carter argues the district court erred by refusing to make a downward departure pursuant to § 5K2.0 of the Sentencing Guidelines[1] based on

_____

[1]Section 5K2.0 of the Sentencing Guidelines provides, in part:

[T]he sentencing court may impose a sentence outside the range established by the applicable guideline, if the court finds "that there exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines that should result in a

extraordinary circumstances, namely her role as sole caretaker for her four young children. This court lacks jurisdiction to consider Carter's claim.

"A discretionary refusal to depart downward is not reviewable by this court unless it appears from the record the sentencing court erroneously believed the Guidelines did not permit a downward departure." *United States v. Nelson*, 54 F.3d 1540, 1544 (10th Cir. 1995). Furthermore, because "'the district courts have become more experienced in applying the Guidelines and more familiar with their power to make discretionary departure decisions under the Guidelines,'" we presume the court was aware of its authority "unless the judge's language unambiguously states that the judge does not believe he has authority to downward depart." *United States v. Rodriguez*, 30 F.3d 1318, 1319 (10th Cir. 1994) (quoting *United States v. Barrera-Barron*, 996 F.2d 244, 246 (10th Cir. 1993)); *see also Nelson*, 54 F.3d at 1544 ("If the record is ambiguous concerning the district court's awareness of its discretion to depart downward, we presume the court was aware of its authority.").

The record of the sentencing hearing does not contain an unambiguous statement on the part of the district court indicating that it erroneously thought it

sentence different from that described."

U.S.S.G. § 5K2.0 (quoting 18 U.S.C. § 3553(b)).

was without power to depart downward. Accordingly, this court lacks jurisdiction to hear Carter's claim. *See Rodriguez*, 30 F.3d at 1319; *Nelson*, 54 F.3d at 1544.

**B. Firearm Enhancement**

Carter argues the district court erred by enhancing her sentence for possession of a firearm pursuant to U.S.S.G. § 2D1.1(b)(1).[2] Agents from the Oklahoma Bureau of Narcotics discovered the gun upon which the enhancement was based when they went to the Lexington Suites Hotel to execute an arrest warrant for codefendant Vernoil Cantley, who was sharing a room with Carter. During a search of the hotel room, the agents found a Davis .380 pistol in Carter's purse on the dresser [3] and 595 grams of crack cocaine in a duffel bag inside the closet.

Both Carter and Cantley were charged with possession with intent to distribute the crack cocaine found in the hotel room. Carter was acquitted of the charge, while Cantley was convicted. At the sentencing hearing, however, the district court found by a preponderance of the evidence that Carter was accountable for the drugs; the court therefore considered the drug quantity when

---

[2]Section 2D1.1(b)(1) of the Sentencing Guidelines provides: "If a dangerous weapon (including a firearm) was possessed, increase by 2 levels." U.S.S.G. § 2D1.1(b)(1).

[3] In a pre-trial motion, Carter argued the gun was illegally seized. At the suppression hearing, the government agreed that it would not introduce the gun into evidence at trial; the district court therefore did not determine whether the gun was illegally seized.

calculating Carter's base offense level. The district court enhanced Carter's sentence for possession of a firearm after determining it was not clearly improbable that the gun found in Carter's purse was connected with the drugs found in the hotel room.

On appeal, Carter argues it is clearly improbable that the gun was connected with the drug offense for the following reasons: (1) the gun was not in close proximity to the drugs; (2) she was staying in a separate room at the hotel and had gone to Cantley's room only to spend the night; and (3) because she was acquitted of the possession charge for the drugs found in the hotel room, there was no evidence linking her to the drugs. In addition, Carter essentially argues that as a matter of law, a firearm enhancement may not be based on a drug charge for which the defendant has been acquitted.

We review the district court's factual findings at sentencing for clear error but review its legal interpretation of the Sentencing Guidelines de novo. *See United States v. Johnson*, 42 F.3d 1312, 1320 (10th Cir. 1994). The Sentencing Guidelines provide that a two-level enhancement for possession of a weapon "should be applied if the weapon was present, unless it is clearly improbable that the weapon was connected with the offense." U.S.S.G. § 2D1.1 application note 3. Initially, the government bears the burden of establishing the temporal and spatial proximity of the weapon to the drug offense. *See United States v. Lang*,

81 F.3d 955, 964 (10th Cir. 1996); *United States v. Roederer*, 11 F.3d 973, 982 (10th Cir. 1993). Proximity may be proved by presenting "'evidence that the weapon was found in the same location where drugs or drug paraphernalia are stored or where part of the transaction occurred.'" *Roederer*, 11 F.3d at 983 (quoting *United States v. Hooten*, 942 F.2d 878, 882 (5th Cir. 1991)). Once the government meets its burden of proving proximity, the burden then shifts to the defendant to show that the enhancement should not apply because it is "clearly improbable" the weapon was connected with the offense. *See Lang*, 81 F.3d at 964; *United States v. Contreras*, 59 F.3d 1038, 1040 (10th Cir. 1995).

The government met its initial burden of proving proximity. During a search of the hotel room where Carter and Cantley were staying, agents found the gun in the same room as the drugs. This is sufficient under our case law to prove proximity. *See, e.g., Johnson*, 42 F.3d at 1320-21; *Contreras*, 59 F.3d at 1039-40; *United States v. Roberts*, 980 F.2d 645, 647-48 (10th Cir. 1992). The burden therefore shifted to Carter to show it was clearly improbable the gun was connected with the offense. *See Lang*, 81 F.3d at 964. Carter has not met this burden.

Carter suggests that based on her brief stay in the hotel room and her acquittal of the possession charge, there is no evidence to show that she even knew of the presence of the drugs, thus making it clearly improbable her gun was

connected with the drug offense. It is well established that "[t]he preponderance standard applies to fact finding in the sentencing process." *United States v. Washington*, 11 F.3d 1510, 1516 (10th Cir. 1993). The district court found by a preponderance of the evidence that Carter knew of the presence of the drugs "by virtue of her knowledge of the extensive, longtime, repeated, general pattern of drug transactions done by Mr. Cantley, frequently in her very presence." Given Cantley's position as leader of the conspiracy and Carter's close relationship with Cantley,[4] the district court's finding is supported by the evidence. The district court further found that "it's [clear] that the weapon was present because of the presence of the drugs." Based on our review of the record, we cannot say the district court's findings were clearly erroneous.

Carter's second argument must also fail. The fact that Carter was acquitted of the possession charge for the drugs found in the hotel room does not preclude a two-level enhancement for the gun found in the room. "The [G]uidelines require that all relevant conduct be considered at sentencing." *Id.* (citing U.S.S.G. § 1B1.3). Furthermore, in drug cases requiring grouping of multiple counts, "specific offense characteristics are to be determined with reference to all acts 'that were part of the same course of conduct or common scheme or plan as the

---

[4]Carter testified that she had a "relationship" with Cantley during 1992 and 1993.

offense of conviction.'" *Roederer*, 11 F.3d at 982 (quoting U.S.S.G. § 1B1.3(a)(2)). Thus, in *Roederer*, this court upheld a firearm enhancement based on a gun found in the defendant's apartment even though all the charges for distribution from the apartment were dismissed after the defendant pleaded guilty to one count of conspiracy to possess with intent to distribute and one count of distribution. *See id.* at 981-83 (citing *United States v. Falesbork*, 5 F.3d 715, 720 (4th Cir. 1993) ("[Relevant conduct] includes possession of a gun while engaging in drug sales related to, though distinct from, the crime of conviction.")).

The facts in this case are similar to the facts in *Roederer*, except that in this case there was an acquittal, rather than a dismissal, of the relevant drug charge. As the Supreme Court recently held, however, a sentencing court may consider conduct related to an offense for which the defendant has been acquitted. *See United States v. Watts*, 117 S. Ct. 633, 638 (1997) (per curiam) ("We therefore hold that a jury's verdict of acquittal does not prevent the sentencing court from considering conduct underlying the acquitted charge, so long as that conduct has been proved by a preponderance of the evidence."); *see also United States v. Garcia*, 987 F.2d 1459, 1460-61 (10th Cir. 1993) (holding district court may consider drug quantities associated with drug charge for which defendant was acquitted in determining defendant's base offense level).

The district court found by a preponderance of the evidence that Carter was accountable for the drugs in the hotel room and, thus, properly considered the drug quantity when calculating Carter's base offense level. *See Watts*, 117 S. Ct. at 635-36; *Garcia*, 987 F.2d at 1460-61. Because possession of these drugs was "part of the same course of conduct or common scheme or plan as the [conspiracy] conviction," the enhancement for possession of a firearm in connection with the drugs was proper. *Roederer*, 11 F.3d at 982.

We therefore conclude the district court did not err by enhancing Carter's sentence for possession of a firearm.

## C. Drug Quantities

Carter argues the district court erred by considering Kenneth Patterson's testimony for purposes of calculating the drug quantities attributable to her. Patterson testified that during 1990 and 1991,[5] he sold Carter approximately five to ten ounces of crack cocaine per month. Carter was held accountable for sixty ounces, or 1701 grams, of crack cocaine based on Patterson's testimony. Carter argues that Patterson's testimony does not possess the required "minimum indicia

---

[5]As alleged in the indictment, the conspiracy for which Carter was convicted began in January 1992 and ended in September 1993. Patterson's sales to Carter occurred before Carter joined the conspiracy. The district court, however, held Carter accountable for these drug quantities in determining her base offense level because it determined the transactions were "part of an ongoing series of similar and connected offenses."

of reliability" because (1) Patterson was a convicted felon who was originally charged in the conspiracy and pleaded guilty only after agreeing to testify against the other defendants in exchange for consideration at sentencing; and (2) Patterson testified that he sold crack cocaine to Carter, which conflicts with the government's theory of the case, that Carter and the other defendants bought cocaine powder, cooked it, and sold it as crack cocaine.

"We review the district court's factual findings regarding the quantity of drugs for which a defendant is held responsible for clear error." *United States v. Hooks*, 65 F.3d 850, 854 (10th Cir. 1995), *cert. denied*, 116 S. Ct. 797 (1996). The government must prove the quantity of drugs by a preponderance of the evidence. *See id.* The district court may estimate the quantity provided the information underlying the estimate has a "minimum indicia of reliability." *United States v. Browning*, 61 F.3d 752, 754 (10th Cir. 1995). Furthermore, "[w]itness credibility at sentencing is a question for the district court." *Id.*

This court has previously upheld drug quantity determinations based on the testimony of witnesses of questionable credibility. *See, e.g., id.* at 754-55 (holding district court's reliance on witnesses who had histories of drug use, incentives to minimize their own culpability, and criminal records was not clearly erroneous); *United States v. Deninno*, 29 F.3d 572, 578 (10th Cir. 1994) (rejecting argument that district court erred by basing drug quantity determination on

"uncorroborated statements of individuals of questionable credibility"). The district court recognized in this case that many of the witnesses had criminal histories but nevertheless found that all the witnesses, including Patterson, were credible. The court specifically noted that Patterson's testimony was both consistent with and corroborative of the testimony of other witnesses. Furthermore, Patterson's testimony was based on his first-hand knowledge of actual drug sales to Carter. Based on our review of the record, we are not "firmly convinced that an error has been made." *United States v. Nieto*, 60 F.3d 1464, 1469 (10th Cir. 1995), *cert. denied*, 116 S. Ct. 793 (1996). We therefore conclude the district court's reliance on Patterson's testimony in determining the drug quantities attributable to Carter was not clearly erroneous.

The judgment of the United States District Court for the Western District of Oklahoma is **AFFIRMED.**

ENTERED BY THE COURT:


Michael R. Murphy
Circuit Judge

-11-