**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**MAR 5 1998**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

v.

JUAN MANUEL LUEVANO,

Defendant-Appellant.

No. 97-6121
(D.C. No. 96-CR-143-R)
(W.D. Okla.)

**ORDER AND JUDGMENT**[*]

Before **ANDERSON**, **McKAY**, and **LUCERO**, Circuit Judges.

After examining the briefs and appellate record, this panel has determined

unanimously that oral argument would not materially assist the determination of

this appeal. See Fed. R. App. P. 34(a); 10th Cir. R. 34.1.9. The case is therefore

ordered submitted without oral argument.

---

[*]     This order and judgment is not binding precedent, except under the
doctrines of law of the case, res judicata, and collateral estoppel. The court
generally disfavors the citation of orders and judgments; nevertheless, an order
and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

In September 1996, a two-count indictment was returned against defendant charging him with possession of contraband in federal prison, in violation of 18 U.S.C. § 1791(a)(2) (Count I), and with assault with a dangerous weapon with intent to do bodily harm, in violation of 18 U.S.C. § 113(a)(3) (Count II). These counts arose out of an altercation at the federal facility in El Reno, Oklahoma, involving approximately thirty inmates. During the altercation, an inmate named Vega-Segura was stabbed. Defendant, who was involved in the altercation and was found in possession of a homemade knife, or "shank," was charged with Vega-Segura's stabbing. At prison disciplinary proceedings, defendant admitted to possession of a knife, but denied stabbing Vega-Segura.

Defendant subsequently pled guilty to the first count of the criminal indictment, in return for a dismissal of the second count. At the sentencing hearing, the district court informed defendant that it intended to hear testimony about the altercation and that, if it found defendant had stabbed Vega-Segura, it would consider that fact as grounds for an upward departure. The hearing was then continued so that defendant could be prepared to address the issue. After listening to the government's evidence at the subsequent hearing, the district court found that defendant had stabbed Vega-Segura and, therefore, it departed upward from the range provided by section 2P1.2 of the United States Sentencing Guidelines (U.S.S.G.), which was thirty to thirty-seven months. The court

imposed a sentence of sixty months, which represented the statutory maximum sentence for possession of contraband in a federal prison.

On appeal, defendant argues that the district court erred in departing upward from the Guideline range. He contends that the facts in the record do not support the reason for the departure and that the degree of departure is unreasonable. Defendant also challenges the district court's failure to give him a two-level reduction for acceptance of responsibility.

I.

We review the district court's decision to depart from the Sentencing Guidelines under a unitary abuse of discretion standard. See Koon v. United States, 518 U.S. 81, 116 S. Ct. 2035, 2046-48 (1996).

> A district court must impose a sentence within the Guideline range unless it determines "that there exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines that should result in a sentence different from that described."

United States v. Rodriguez-Velarde, 127 F.3d 966, 968 (10th Cir. 1997) (quoting 18 U.S.C. § 3553(b)). When reviewing a district court's decision to depart from the Guidelines, we, in turn, should consider the following:

> (1) whether the factual circumstances supporting a departure are permissible departure factors; (2) whether the departure factors relied upon by the district court remove the defendant from the applicable Guideline heartland thus warranting a departure, (3) whether the

record sufficiently supports the factual basis underlying the departure, and (4) whether the degree of departure is reasonable.

United States v. Collins, 122 F.3d 1297, 1303 (10th Cir. 1997). Defendant challenges only the third and fourth parts of the Collins analysis on appeal. We will consider each in turn.

A.

Defendant contends that the record does not provide factual support for the district court's finding that defendant assaulted Vega-Segura with a weapon. We will overturn the district court's factual finding only if it is clearly erroneous. See United States v. White, 893 F.2d 276, 278 (10th Cir. 1990); cf. Collins, 122 F.3d at 1303, 1305 (indicating that White's discussion of appellate review is still valid for the third and fourth parts of the post-Koon analysis).

At the final sentencing hearing, the government presented all of its evidence concerning the altercation through Joel Tsiumis, the FBI agent who investigated the incident. Mr. Tsiumis testified that Vega-Segura received a five millimeter puncture wound in his right upper torso, which suggested that the weapon used was shaped like an ice-pick. He also testified about the observations of eight prison employees who witnessed the altercation. The witnesses' descriptions of the events were not entirely uniform, and those who said they saw defendant in possession of a shank did not agree on the shape of the shank. Two

of the witnesses reported that they saw defendant with a long ice-pick-shaped shank, while others saw him only with the shank he eventually surrendered to prison guards, which was nine inches long and shaped like a knife. Nonetheless, the witnesses' observations reflect that seven of them saw defendant assault Vega-Segura with some kind of weapon with a sharpened point. Mr. Tsiumis testified that no ice-pick shank was recovered after the altercation, though he explained that there were many inmates running around and that one could quite easily have picked it up and spirited it away. Mr. Tsiumis said he believed that defendant had two shanks in his possession, both the ice-pick shank with which he stabbed Vega-Segura and the nine inch knife he surrendered to prison authorities, and that he disposed of the former before he was apprehended by prison guards.

The government also introduced a letter that defendant had written to a former cellmate, in which he talked about the altercation as follows:

> Well Cellie back in May the day of the Incident, all hell broke loose, and the pigs were chasing me all over the yard. HA! Damn near stuck a couple of them idiots, hell I had Scarface hollering like a gutted pig. HA! HA! [A]t this present moment I don't think I'm to[o] well liked by those California dudes.

R. Vol. I, Doc. 14, Gov't. Ex. 1, at 4. Mr. Tsiumis testified that Vega-Segura, who had a scar that ran from his chin to his left ear, was called "Scarface." He also explained that the "California dudes" mentioned in the letter was a reference

to the fact that rival Mexican gangs from Texas and California were involved in the altercation. Mr. Tsiumis testified that defendant is from Texas. Defendant did not offer any evidence at the sentencing hearing, other than an offer of proof by his counsel that defendant had the nine inch knife tied onto his right hand with a t-shirt.

Based on the evidence presented to the district court, we cannot say that the court erred in finding that defendant did, in fact, stab Vega-Segura. Therefore, we conclude that the district court did not abuse its discretion in deciding that an upward departure was warranted in this case. The only question remaining is whether the degree of departure was reasonable.

B.

In assessing the reasonableness of the degree of departure, we consider the reasons the district court gave for imposing the particular sentence, as well as other factors, such as "the seriousness of the offense, the need for just punishment, deterrence, protection of the public, correctional treatment, the sentencing pattern of the Guidelines, the policy statements contained in the Guidelines, and the need to avoid unwarranted sentencing disparities." Collins, 122 F.3d at 1308-09 (quotation omitted). "The [district] court is not required to explain the degree of departure with mathematical exactitude but should justify the departure by analogy to or extrapolation from the Guidelines." United States

-6-

v. Arutunoff, 1 F.3d 1112, 1120 (10th Cir. 1993); see also United States v. O'Dell, 965 F.2d 937, 939 (10th Cir. 1992) ("Our opinions have required the district court to explain the specific degree of departure by providing some method of analogy, extrapolation or reference to the sentencing guidelines.").

The aggravating circumstance that the district court thought justified a departure here was defendant's assault upon Vega-Segura with a weapon, i.e., the conduct set forth in the dismissed count of the indictment. Therefore, to determine the degree of departure, the court looked at U.S.S.G. § 2A2.2, covering aggravated assault, and calculated what defendant's sentence would have been had he been convicted of the dismissed count. See, e.g., United States v. Jackson, 921 F.2d 985, 991 (10th Cir. 1990) (stating that one way a court may determine the degree of departure is to "treat the aggravating factor as a separate crime and ask how the defendant would be treated if convicted of it") (quotation omitted). The presentence report (PSR) recited that defendant's offense level under § 2A2.2 would be twenty-three, which, coupled with a criminal history category of V, would yield a sentence within the range of 84-105 months. Based on the much more lengthy sentence that defendant would have received had he been convicted of stabbing Vega-Segura, the district court increased his sentence for possession of contraband to the statutory maximum of sixty months.

Defendant challenges the degree of departure on the ground that it is based on an incorrect calculation of the offense level under § 2A2.2. Defendant argues that the PSR incorrectly calculated the offense level as twenty-three. He contends that the offense level should be only seventeen, at the most, which would yield a sentence range of forty-six to fifty-seven months. Although defendant objected to a number of statements in the PSR, defendant did not object to the offense level calculated for aggravated assault. A failure to challenge an alleged factual inaccuracy in the PSR in the district court waives the right to challenge that fact on appeal. See O'Dell, 965 F.2d at 938. Moreover, defendant's calculation of the offense level omits an additional four levels that should be added to the base offense level for use of a dangerous weapon. Thus, at a minimum, the offense level is properly calculated at twenty-one, which would yield a sentence range of seventy to eighty-seven months.

The district court articulated its method of departure, and that method was consistent with the analogous Guideline provisions. Therefore, we conclude that the district court's degree of departure from the Guidelines was reasonable.

II.

We turn, then, to defendant's final challenge to his sentence: the district court's failure to reduce his offense level under U.S.S.G. § 3E1.1 for acceptance of responsibility. "District courts have broad discretion to grant or deny the

reduction for acceptance of responsibility, and thus, our review is under the clearly erroneous standard." United States v. Robertson, 45 F.3d 1423, 1449 (10th Cir. 1995) (citation omitted).

"The defendant bears the burden of establishing his entitlement to a reduction under § 3E1.1." United States v. Nelson, 54 F.3d 1540, 1544 (10th Cir. 1995). A defendant who pleads guilty is not automatically entitled to a reduction in his sentence for acceptance of responsibility. See U.S.S.G. § 3E1.1, application note 3. To receive a reduction of his sentence, the defendant must show "recognition and affirmative acceptance of personal responsibility for his criminal conduct." United States v. McAlpine, 32 F.3d 484, 489 (10th Cir. 1994) (quotation omitted). A defendant need not affirmatively admit relevant conduct beyond the offense of conviction to obtain a reduction under § 3E1.1, but may remain silent with respect to other relevant conduct. See U.S.S.G. § 3E1.1, application note 1(a). Nonetheless, "a defendant who falsely denies, or frivolously contests, relevant conduct that the court determines to be true has acted in a manner inconsistent with acceptance of responsibility." Id.

Here, the PSR considered the stabbing of Vega-Segura to be relevant conduct. Defendant does not challenge the characterization of the stabbing as relevant conduct, he simply insists that he did not do it. The district court, however, found that defendant did stab Vega-Segura. Because the district court

found defendant's denial of relevant conduct to be false, the court did not abuse its discretion in denying defendant the two-level reduction for acceptance of responsibility.

The judgment of the United States District Court for the Western District of Oklahoma is AFFIRMED.

Entered for the Court

Stephen H. Anderson
Circuit Judge